UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| BUTCH LAWS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:20-CV-00214-JRG-DCP |
| | ) | |
| BOBBY BROOKS, LT. STARLA BERRY, TAMMY REAGAN, SGT. STACIE ENGLAND, SGT. JOSH SMITH, and ROBERT SEXTON, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The Court is in receipt of a pro se prisoner's complaint under 42 U.S.C. § 1983 [Doc. 2] and related motion for leave to proceed *in forma pauperis* [Doc. 1].

### I. MOTION TO PROCEED *IN FORMA PAUPERIS*

A review of Plaintiff's certified inmate trust account record demonstrates that Plaintiff lacks sufficient financial resources to pay the filing fee. Accordingly, pursuant to 28 U.S.C. § 1915, this motion [Doc. 1] is **GRANTED**.

Because Plaintiff is an inmate at the Scott County Justice Center, he is **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee 37902 as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b) (1) (A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account is directed to submit twenty percent (20%) of Plaintiff's preceding monthly income

(or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this fee-collection procedure, the Clerk is **DIRECTED** to mail a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined. The Clerk is also **DIRECTED** to furnish a copy of this order to the Court's financial deputy. This order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II.	SCREENING

### A.	Screening Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim, however. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

### B. Allegations of Complaint

Plaintiff, an inmate at the Claiborne County Jail housed in the maximum-security unit, was attacked by another maximum-security inmate, David King, on February 11, 2020 [Doc. 2 at 4]. Days earlier, Plaintiff informed Sgt. Stacie England that another inmate, David Combs, had "put a hit" on Plaintiff and offered inmates, including King, $10,000 to either cut off Plaintiff's genitals or kill him [*Id.* at 4-5]. Plaintiff also filed grievances to Lt. Starla Berry, Tammy Reagan, and Sheriff Bobby Brooks, advising them of the danger he was in by being housed in the maximum-security unit with Combs and King, who had by this point informed Plaintiff that he intended to kill Plaintiff [*Id.*].

At approximately 1:00 a.m. on February 11, 2020, Officer Robert Sexton unlocked King's cell door and allowed him out of his cell, where he approached Plaintiff's cell and displayed "a

sharp object" [*Id*. at 4]. Sometime thereafter, Officer Sexton then unlocked Plaintiff's cell "and allowed a[n] altercation to occur" in which Plaintiff suffered deep cuts to his hand, wrist, and head in attempts to disarm King [*Id*.]. During this attack, Officer Sexton struck Plaintiff in the head and face with his radio [*Id*.]. Plaintiff, injured and bleeding after the attack, requested medical treatment from Officer Sexton and Sgt. Josh Smith but was denied any medical care [*Id*. at 4, 6].

The following day, February 12, 2020, Plaintiff was transported to the Scott County Jail for housing, and officials there took photographs of his injuries [*Id*. at 6]. Plaintiff subsequently filed the instant complaint seeking compensatory and declaratory relief.

### C. Analysis

#### 1. Failure to Protect

The Eighth Amendment guarantees prisoners a constitutionally protected right to personal safety. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Included therein is the right to be free "from violence at the hands of other prisoners." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer*, 511 U.S. at 833). As such, prison officials must "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). A jail official may violate this right by being deliberately indifferent to a prisoner's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988). An officer is deliberately indifferent to such a risk where he is "subjectively aware of the risk" and "disregard[s] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (*quoting Farmer*, 511 U.S. at 847).

First, the Court notes that Defendants Berry, Regan, and Brooks cannot be held liable in this action merely because Plaintiff filed grievances to which Defendants did not respond, as inmates have no constitutional right to a grievance procedure, and therefore, they have no interest

4

in having any such grievances satisfactorily resolved. *See LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). Therefore, any liability that each of these Defendants might be exposed to must come from a subjective knowledge of a threat of harm to Plaintiff. Here, Plaintiff alleges that Defendants Berry, Regan, Brooks, and England all knew that Combs had instigated a murder-for-hire plot against Plaintiff, and that King had made threats to kill Plaintiff as part of that plot [Doc. 2 at 4-5]. Nonetheless, no apparent action was taken, and Plaintiff was subsequently attacked in a plausibly foreseeable incident of which each of these Defendants was subjectively aware, and in which Officer Sexton participated [*Id.*]. Therefore, the Court will allow a failure-to-protect claim to **PROCEED** against Defendants Brooks, Berry, Reagan, England, and Sexton.

However, Plaintiff does not allege that Sgt. Josh Smith personally knew of any threat to Plaintiff, or that he was directly involved in Officer Sexton's actions. He only alleges that Officer Sexton unlocked Plaintiff's cell door "under the supervision of Sgt. Josh Smith" [*Id*. at 4]. An officer may be liable under § 1983 for a failure to supervise only if they "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Harvey v. Campbell Cty., Tenn*., 453 F. App'x 557, 563 (6th Cir. 2011); *see also Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (explaining that "[s]upervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior'") (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). Plaintiff has made no allegations against Sgt. Smith that would give rise to any liability for failing to protect Plaintiff, and therefore, Plaintiff has failed to state a failure-to-protect claim against Sgt. Josh Smith.

    2.    **Excessive Force**

Plaintiff also maintains that Officer Sexton engaged in an act of force that allowed the attack to escalate against Plaintiff and prevented him from withdrawing from the conflict [Doc. 2

5

at 4]. Accordingly, the Court will allow an excessive force claim to **PROCEED** against Defendant Sexton. *See Hudson v. McMillan*, 503 U.S. 1, 6, 9 (1992) (holding prohibition against excessive force involves a two-part inquiry: (1) "whether force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm," and (2) whether the conduct, in context, is sufficiently serious to offend "contemporary standards of decency"). However, Plaintiff has not alleged an act of excessive force by any other named Defendant, and therefore, Plaintiff has not stated a viable excessive force claim against any other Defendant.

### 3. Medical Care

Finally, Plaintiff alleges that Officer Sexton and Sgt. Josh Smith denied him medical treatment for serious injuries [Doc. 2 at 4, 6]. To state an Eighth Amendment claim for the denial of medical treatment, a plaintiff must show a "sufficiently serious" medical need, and the defendant's "deliberate indifference" to that need. *Farmer*, 511 U.S at 834, 842. A medical need is "serious" if it has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention. S*ee, e.g., Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 896-97 (6th Cir. 2004). The Court presumes that deep cuts, head trauma, and bleeding are obvious injuries that satisfy this standard, and therefore, the Court will allow this claim to **PROCEED** against Defendants Sexton and Smith. Plaintiff has not alleged that any other Defendant denied him medical treatment, however, and he has not, therefore, stated a viable claim for the denial of medical care against the remaining Defendants.

### III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set for above;

4. The Clerk is **DIRECTED** to mail a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined, and to the Court's financial deputy;

5. Plaintiff's claims against Defendants shall **PROCEED** as set forth above;

6. The Clerk is hereby **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Brooks, Berry, Reagan, Englad, Smith, and Sexton;

7. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within thirty (30) days of entry of this memorandum and order. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service pursuant to Federal Rule of Civil Procedure 4;

8. Plaintiff is **NOTIFIED** that failure to return the completed service packets within the time required may result in dismissal of this action for want of prosecution and/or failure to follow Court orders;

9. Defendants shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the complaint, any such failure may result in entry of judgment by default;

10. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

So ordered.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE