UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| BUTCH LAWS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BOBBY BROOKS, ) <br> LIEUTENANT STARLA BARRY, ) <br> TAMMY REGAN, ) <br> SERGEANT STACEY ENGLAND, ) <br> SERGEANT JOSH SMITH, ) <br> and ROBERT SEXTON, ) <br> ) <br> Defendants. ) | CIVIL ACTION NO.: 3:20-CV-214 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Come now the defendants, Bobby Brooks, Lieutenant Starla Barry, Tammy Regan, Sergeant Stacey England, Sergeant Josh Smith, and Robert Sexton (collectively "the Claiborne County defendants"), by and through counsel, pursuant to Federal Rule of Civil Procedure 56 and applicable caselaw and hereby submit the following memorandum of law in support of their motion for summary judgment.

**I.   Statement of the case:**

This is a civil rights cause of action. The plaintiff, Butch Laws, filed his complaint on May 18, 2020 against the above-named defendants. Plaintiff is presently an inmate of the Hawkins County Jail. At all times relevant to his cause of action, he was an inmate of the Claiborne County Jail. Plaintiff claimed that defendants Brooks, Berry, Regan, England, Sexton, and Smith were aware that another inmate, David Combs, had put a hit out on the plaintiff and offered other inmates $10,000 to cut off the

1

plaintiff's genitals or kill him. (Doc 2, Doc. 26). The plaintiff claimed that on February 11, 2020, at approximately 1:00 a.m., defendant Sexton unlocked inmate David King's cell and allowed inmate King to assault the plaintiff with a sharp object. (Doc. 2). The plaintiff claimed that defendant Sexton joined in the assault and beat the plaintiff with a radio. (Doc. 2). The plaintiff claimed that the assault left him with deep cuts to his hand, wrist, and head which left him bleeding and severely injured. (Doc. 2). Additionally, the plaintiff claimed that, while bleeding and injured, he requested medical treatment from defendants Sexton and Smith and they denied him treatment. (Doc. 2).

Pursuant to the court's screening procedures under the Prison Litigation Reform Act ("PLRA"), the court found that the plaintiff's complaint established enough facts to state a cause of action against defendants Brooks, Berry, Ragen, England, and Sexton for failure to protect in violation of the Eighth Amendment. The court dismissed defendant Smith from the lawsuit as to the failure to protect claim only. (Doc. 4). Additionally, the court found that the plaintiff's complaint established enough facts to state a cause of action against defendant Sexton for use of excessive force in violation of the Eighth Amendment. (Doc. 4). The court also found that the plaintiff's complaint established enough facts to state a cause of action against both defendant Sexton and Smith for denial of medical care in violation of the Eighth Amendment. (Doc. 4). The Claiborne County defendants now move for summary judgment.

    **II.    Issues presented:**

        **a.    Whether the Claiborne County defendants are entitled to qualified immunity because the plaintiff is unable to establish that these defendants violated his Eighth amendment rights as outlined in his complaint; and**

        **b.    Whether the complaint should be dismissed because the plaintiff failed to exhaust the jail's grievance procedure as required by the Prison Litigation Reform Act.**

### III. Standard of review:

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U. S. 574, 586–87 (1986); *Burchett v. Keifer*, 301 F.3d 937, 942 (6th Cir. 2002). The court may not resolve genuine disputes of facts in favor of the movant. *Tolan v. Cotton*, 124 S.Ct. 1861, 1863 (2014).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477 U.S. at 317. To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id*.

The court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id*. at 250. The court does not weigh the evidence or determine the truth of the matter. *Id*. at 249. Nor does the court search the record to "establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

3

When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**IV.　Argument:**

    **a.　The Claiborne County defendants are entitled to qualified immunity because the plaintiff fails to establish that they violated his Eighth amendment rights as outlined in his complaint.**

As an initial matter, the video of the assault that the plaintiff claims gave rise to this cause of action plainly shows that the plaintiff, in fact, assaulted another inmate who was not acting in a threatening manner toward the plaintiff. (exhibit 1 and exhibit 2) (The plaintiff can be seen on exhibits 1 and 2 at the 17:43 minute mark. The plaintiff is identifiable as the bald-headed individual without a shirt or shoes.). Video of the assault committed by the plaintiff evidences that the plaintiff entered the pod with a group of other inmates and that he immediately walked from one end of the pod to the other end for the purpose of confronting the subject inmate. Video shows that the subject inmate was not taking an aggressive posture toward the plaintiff, but instead, backing away into a corner as the plaintiff confronts him. *Id.* In accordance with what is depicted in the video, the on-duty guard, defendant Sexton, crosses the pod to intervene and several other inmates follow to observe and/or attempt to participate in the assault that the plaintiff just initiated against the subject inmate. *Id.* Video shows defendant Sexton stepping in between the plaintiff and the inmate that is the subject of the plaintiff's attack, while defendant Sexton simultaneously attempts to keep other inmates away. *Id.* The inmates and defendant Sexton find themselves confined to a corner of the pod while the plaintiff attempts to get at the subject inmate to continue the assault. *Id.* The plaintiff gets around defendant Sexton and begins beating the subject inmate while other inmates

**4**

close in around defendant Sexton and attempt to join in on the beating of the subject inmate. *Id*. Those involved in the altercation: the plaintiff, the subject inmate that the plaintiff assaulted, and defendant Sexton go to ground while other inmates close in around them. *Id*. The subject inmate that plaintiff is assaulting can be seen escaping the corner of the pod and fleeing to the center of the pod. *Id*. The plaintiff gives chase and defendant Sexton again attempts to place himself in between both men to separate them. *Id*. All the while, other inmates observing and/or attempting to participate follow the brawl. *Id*. At the 18:55 minute mark, 3 inmates, including the plaintiff, chase the subject inmate toward the wall, while defendant Sexton continues his attempt to separate the men. *Id*. At this point of the video, defendant Sexton successfully places himself in between the 3 inmates, including the plaintiff, and the inmate that is the subject of the assault. *Id*. Other guards enter the pod to assist and break-up the inmates. *Id*. By the 19:25 minute mark, the inmates are broken up with the assistance of the additional guards. All of the inmates, including the plaintiff, are escorted out of the pod while the inmate that was the subject of the plaintiff's assault is separated and escorted out of the pod through a different door. *Id*. At no time during the assault on the subject inmate is the plaintiff seen bleeding or injured. *Id*. Plaintiff was transferred to the Hawkins County Jail later the same day. His booking photo, taken after the assaulted shown in the video, does not evidence any injuries as claimed in his complaint. (exhibit 3). Given that video and photographic evidence cited herein blatantly contradict the plaintiff's version of events to the degree that no reasonable jury could believe him, the court should not adopt the plaintiff's version of events for purposes of ruling on the motion for summary judgment. *Scott v. Harris*, 500 U.S. at 380.

      42 U.S.C. § 1983 provides "a cause of action for deprivation under color of state law, of any rights, privileges or immunities secured by the Constitution or laws of the United States." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 940–41 (6th Cir.2010) (internal quotation marks and citation omitted).

5

However, "[u]nder the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Phillips v. Roane Cnty.,* 534 F.3d 531, 538 (6th Cir.2008) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). It protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). If a defendant asserts the defense of qualified immunity, the plaintiff bears the burden of showing that the immunity does not apply. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Qualified immunity is a two-pronged test where the court considers (1) whether the defendant's actions violated a constitutional right; and (2) whether that right was clearly established such that a reasonable officer would understand that he is violating it. *Gravey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001). The court has discretion to decide which of the two prongs of qualified-immunity analysis to tackle first. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009). To show that qualified immunity does not apply, a plaintiff must produce "sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of clearly established constitutional rights." *Andrews v. Hickman County*, 700 F.3d 845, 853 (6th Cir. 2012). Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (citing *Groh v. Ramirez,* 540 U.S. 551, 567 (2004) (KENNEDY, J., dissenting) (quoting *Butz v. Economou,* 438 U.S. 478, 507 (1978), for the proposition that qualified

6

Case 3:20-cv-00214-JRG-DCP   Document 32   Filed 11/03/20   Page 6 of 13   PageID #: 153

immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law").

In the context of a claim of an Eighth Amendment violation of the Cruel and Unusual Punishment Clause, as here, the plaintiff must show that a prison official had a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In prison-conditions cases, that state of mind is one of "deliberate indifference" to inmate health or safety. *Id*.

Deliberate indifference includes both objective and subjective elements. *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). The objective element requires the harm to be "sufficiently serious." *Id*. (quoting *Farmer*, 511 U.S. at 834). Therefore, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. The subjective element focuses on whether prison officials "had a sufficiently culpable state of mind." *Id*. This requires that prison officials know that inmates face a substantial risk of harm and "disregard that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Prison officials must exhibit more than lack of due care for a prisoner's safety before an Eighth Amendment violation will be found. *Id*. at 835. *See also Reilly v. Vadlamudi*, 680 F.3d 617, 623–24 (6th Cir. 2012) ("Deliberate indifference is characterized by obduracy or wantonness—it cannot be predicated on negligence, inadvertence, or good faith error."). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. It is not enough that the official "should" have perceived a substantial risk, but did not. *Id*. Prison officials charged with deliberate indifference might show that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent. *Farmer*, 511 U.S. at 844.

7

In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. A prison official's duty under the Eighth Amendment is to ensure " 'reasonable safety,' " *Helling v. McKinney,* 509 U.S. 25, 33 (1993); see also *Washington v. Harper,* 494 U.S. 210, 225 (1990); *Hudson v. Palmer,* 468 U.S. 517, 526–527 (1984) a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions," *Spain v. Procunier,* 600 F.2d 189, 193 (9th Cir. 1979) (Kennedy, J.); see also *Bell v. Wolfish,* 441 U.S. 520, 547–548, 562 (1979). Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause. *Farmer*, 511 U.S. at 845.

### (i). Claims of failure to protect against defendant Brooks, Berry, Ragen, England, and Sexton.

With respect to the present matter, the plaintiff's complaint and "state[ment] of facts" filed as Document 26 describe a situation where defendants Berry, Regan, Brooks, Sexton, and England knew that the plaintiff's life had been threatened by inmate Combs, yet they did not act and in fact purposefully placed him in circumstances where they knew the alleged murder for hire plot may be carried out. (Doc. 2 and Doc. 26). The plaintiff claims that the resulting assault committed on him by inmate King was the result of these defendants' failure to protect him. (Doc. 2 and Doc. 26). Given that the video evidence cited herein (exhibit 1 and exhibit 2) clearly shows that the plaintiff was not assaulted and in fact committed an assault himself on another inmate; and given that photographic evidence (exhibit 3) shows that he did not sustain any of the injuries he alleged in his complaint, the plaintiff's version of events is blatantly contradicted by the record to the degree that no reasonable jury would believe his version of events. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). If anything, the video evidence cited herein shows that the plaintiff was a danger to other inmates.

8

Claiborne County maintains policies and procedures governing inmate health and safety. (exhibit 4). The plaintiff is unable to show that these individual defendants violated these policies and procedures. (exhibit 4). Thus, the plaintiff is unable to establish that defendants Berry, Regan, Brooks, Sexton, and England were deliberately indifferent to the plaintiff's health and safety. Consequently, qualified immunity is appropriate for these defendants.

### (ii). Claims of excessive force against defendant Sexton.

As the court noted in its order, dated May 27, 2020 (Doc. 4), the prohibition against excessive force in the context of a claim of an Eighth Amendment violation of the Cruel and Unusual Punishment Clause involves a 2 part inquiry: 1) whether force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm, and (2) whether the conduct, in context, is sufficiently serious to offend "contemporary standards of decency". *Hudson v. McMillan,* 503 U.S. 1, 6, 9 (1992).

Given that the video evidence cited herein (exhibit 1 and exhibit 2) clearly shows that the plaintiff assaulted another inmate, not the other way around; and given that photographic evidence (exhibit 3) shows that he did not sustain any of the injuries he alleged in his complaint, the plaintiff is unable to establish either prong of the above-outlined test. On the contrary, the video evidence affirmatively shows that defendant Sexton attempted to restore order by placing himself in between the plaintiff and the subject of the plaintiff's attack, in an attempt to separate the men. Additionally, at no time is the plaintiff seen injured, hurt or bleeding as he alleges. (exhibit 1, exhibit 2, and exhibit 3). Additionally, Claiborne County maintains policies and procedures for use of force. (exhibit 4). The plaintiff is unable to show that defendant Sexton violated these policies and procedures in attempting to maintain order and discipline as evidenced by the video evidence cited herein. (exhibit 4). Consequently, qualified immunity is appropriate for defendant Sexton on this

9

claim.

### (iii). Claims of denial of medical care against defendants Smith and Sexton.

As the court noted in its order, dated May 27, 2020 (Doc. 4)

> To state an Eighth Amendment claim for the denial of medical treatment, a plaintiff must show a sufficiently serious medical need, and the defendant's deliberate indifference to that need. A medical need is "serious" if it has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention.

*Id.* (internal citations and quotations omitted).

Plaintiff claims that the assault on him by inmate King resulted in "deep cuts to [his] hand, wrist, and head" from attempting to disarm inmate King. (Doc. 2). Additionally, the plaintiff claimed that he was injured from defendant Sexton striking him in the head with a radio and that he was "severely injured and bleeding." (Doc. 2). The plaintiff claims that despite the severity of these injuries, defendants Smith and Sexton refused to provide him treatment. (Doc. 2).

Again, as with his claims of excessive force and failure to protect, the plaintiff's claims of denial of medical needs are blatantly contradicted by the video and photographic evidence cited herein. Video evidence clearly shows that the plaintiff was not bleeding nor severely injured. (exhibit 1 and exhibit 2). Additionally, photo evidence affirms that the plaintiff did not have any of the injuries he claimed in his complaint. (exhibit 3). Consequently, the plaintiff is unable to establish that any injury he may have sustained during the assault he perpetrated on another inmate was "sufficiently serious" within the meaning of Eighth Amendment. Additionally, the jail maintains a procedure for inmates to request medical treatment. (exhibit 4). Jail records do not show that the inmate requested treatment as a result of the assault he committed on another inmate on February 11, 2020. (exhibit 4). Given that the plaintiff did not exhibit any of the injuries he alleged in his complaint (exhibit 1, exhibit 2, and exhibit 3); and given that he did not request

10

treatment (exhibit 4), he is unable to establish that defendants Smith and Sexton were deliberately indifferent to a serious medical need. Therefore, defendants Smith and Sexton are entitled to qualified immunity on this claim.

        c.        **The plaintiff failed to exhaust the grievance procedure as required under the Prison Litigation Reform Act.**

The Prison Litigation Reform Act of 1995 ("PLRA") "mandates early judicial screening of prisoner complaints and requires prisoners to exhaust prison grievance procedures before filing suit." *McGowan v. Cantrell*, 2010 WL 446914, *16 (E.D. Tenn. Feb. 2, 2010) (citing 42 U.S.C. § 1997e(a)). The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Administrative exhaustion is mandatory, regardless of the type of relief sought, or whether such relief can be granted through the administrative process. *Ross. v. Blake*, 136 S. Ct. 1850, 1858 (2016); *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001). "In order to properly exhaust all available administrative remedies, the prisoner must complete the administrative review process as defined by the grievance procedures in place at the prison." *Rogers v. Davidson County Sheriff's Office*, 2009 WL 1971597, at *8-9 (M.D. Tenn. May 26, 2009) (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)). The Eastern District in *McGowan*, relying upon the findings in the Supreme Court case of *Jones v. Brock* found that "'[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.'" (*McGowan v. Cantrell*, 2010 WL 446914, *16 (E.D. Tenn. Feb. 2, 2010) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)). The Middle District of Tennessee found in *Jones v. Swanson Servs. Corp.*, that an inmate's "failure to exhaust administrative remedies is ground[s] for dismissal." *Jones v. Swanson Servs. Corp.*, 2009 WL 2151300, at *5 (M.D. Tenn. Jul. 13, 2009) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).

11

With respect to the present matter, the plaintiff claims that he filed grievances, but jail records do not show that the plaintiff utilized the grievance procedure let along exhausted the procedure before filing this lawsuit. (exhibit 4). Given that the plaintiff is unable to establish compliance with the PLRA, his complaint warrants dismissal as a matter of law.

## V.     Conclusion:

In accordance with the standard of review for summary judgment and the applicable standard of review for when the record blatantly shows that the plaintiff's version of events is dishonest, the plaintiff's claims fail as a matter of law. The plaintiff has not set forth any facts from which a reasonable juror could find that the Claiborne County defendants are not entitled to qualified immunity. Additionally, the plaintiff has not established proof that he exhausted the jail's prisoner grievance procedure as is required by the Prison Litigation Reform Act. The plaintiff's failure to establish compliance with the PLRA warrants dismissal of this complaint.

Respectfully submitted:

/s/ Federico A. Flores
Rhonda L. Bradshaw – 014082
Federico A. Flores - 029806
Attorneys for Defendant Claiborne County
800 S. Gay Street, Suite 1400
Knoxville, TN  37929
(865) 673-8516

**CERTIFICATE OF SERVICE**

       I hereby certify that on November 3, 2020, a copy of the foregoing memorandum of law in support of the motion for summary judgment was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

Butch Laws
#90595
Hawkins County Jail
117 Justice Center Drive
Rogersville, TN 37857
Pro Se

                                        /s/ Federico A. Flores
                                        Federico A. Flores, BPR # 029806

13

Case 3:20-cv-00214-JRG-DCP   Document 32   Filed 11/03/20   Page 13 of 13   PageID #: 160