UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| BUTCH LAWS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 3:20-CV-214-JRG-DCP |
|  | ) |  |
| BOBBY BROOKS, LT. STARLA | ) |  |
| BERRY, TAMMY REAGAN, SGT. | ) |  |
| STACIE ENGLAND, SGT. JOSH SMITH, | ) |  |
| and ROBERT SEXTON, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## **MEMORANDUM OPINION**

Defendants Bobby Brooks, Lieutenant Starla Berry, Tammy Reagan, Sergeant Stacie England, Sergeant Josh Smith, and Robert Sexton ("Defendants") have filed a motion for summary judgment in this pro se prisoner's civil rights action for violation of 42 U.S.C. § 1983 [Doc. 30].[1] Plaintiff has filed responses opposing the motion [Docs. 34, 37], and Defendants have filed a supplement to their motion [Doc. 38]. Upon consideration of the parties' pleadings, the summary judgment evidence, and the applicable law, the Court finds that summary judgment should be **GRANTED** in favor of Defendants, and this action should be **DISMISSED**.

### I.    PLAINTIFF'S ALLEGATIONS AND PROCEDURAL HISTORY

On February 11, 2020, while Plaintiff was housed in a maximum-security unit at the Claiborne County Jail ("the Jail"), he was attacked by Danny King, another maximum-security inmate [Doc. 2 at 4]. Days earlier, Plaintiff informed Sgt. Stacie England that another inmate, David Combs, had "put a hit" on Plaintiff and offered inmates, including King, $10,000 to either

---

[1] It appears Plaintiff misspelled the names of Defendants Starla Barry, Tammy Regan, and Stacey England [*See* Doc. 30]. While the Court acknowledges this mistake, it retains Plaintiff's original designation of these Defendants for purposes of consistency.

cut off Plaintiff's genitals or kill him [*Id*. at 4-5]. Plaintiff also filed grievances to Lt. Starla Berry, Tammy Reagan, and Sheriff Bobby Brooks, advising them of the danger he was in by being housed in the maximum- security unit with Combs and King, who had by this point informed Plaintiff that they intended to kill Plaintiff [*Id*.].

At approximately 1:00 a.m. on February 11, 2020, Officer Robert Sexton unlocked King's cell door and allowed him out of his cell, where he approached Plaintiff's cell and displayed "a sharp object" [*Id*. at 4]. Sometime thereafter, Officer Sexton then unlocked Plaintiff's cell "and allowed a[n] altercation to occur" in which Plaintiff suffered deep cuts to his hand, wrist, and head in attempts to disarm King [*Id*.]. During this attack, Officer Sexton struck Plaintiff in the head and face with his radio [*Id*.]. Plaintiff, injured and bleeding after the attack, requested medical treatment from Officer Sexton and Sgt. Josh Smith but was denied any medical care [*Id*. at 4, 6].

Plaintiff was transferred to the Scott County Jail the following day, where officials took photos of his injuries [*Id*. at 6]. Plaintiff subsequently filed the instant complaint seeking compensatory and declaratory relief [*Id*. at 7]. After screening Plaintiff's complaint in compliance with the Prison Litigation Reform Act ("PLRA"), the Court found Plaintiff's allegations sufficient to state a plausible claim (1) against Brooks, Berry, Reagan, England, and Sexton for failure to protect; (2) against Sexton for the use of excessive force; and (3) against Sexton and Smith for the denial of medical care [*See, generally*, Doc. 4].

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a),(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is deemed "material" if resolving that fact in favor of one party "might affect the outcome of the suit under governing law." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). To establish an entitlement to summary judgment, the moving party must demonstrate that the nonmoving party cannot establish an essential element of his case for which he bears the ultimate burden of proof at trial. *Celotex*, 477 U.S. at 322; *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993).

Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate by setting forth specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 249. If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact. *Anderson*, 477 U.S. at 248. If no proof is presented, however, the Court does not presume that the nonmovant "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n.*, 497 U.S. 871, 889 (1990)).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), "conclusory allegations," *Lujan*, 497 U.S. at 888, or by a mere "scintilla" of evidence, *Anderson*, 477 U.S. at 252. It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan*, 497 U.S. at 888.

Therefore, in considering a motion for summary judgment, a court must determine whether the non-moving party's allegations are *plausible*. *Matsushita,* 475 U.S. at 586. (emphasis added). "[D]etermining whether a complaint states a plausible claim for relief. . . [is] context-specific[,] . . . requir[ing] the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (discussing plausibility of claim as a requirement to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

In considering a motion for summary judgment, once the court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, . . . [the ultimate decision becomes]. . . a pure question of law." *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

A district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded, however. *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998). Rather, the court is required to, at a minimum, examine the motion to ensure that the movant has met its initial burden. *Id*. In doing so, the court "must not overlook the possibility of evidentiary misstatements presented by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 407 (6th Cir. 1992). The court must "intelligently and carefully review the legitimacy of [] an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the *riposte* for a silent party." *Id.* In the absence of a response, however, the Court will not "*sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party." *Id*. at 410. If the court determines that the unrebutted evidence set forth by the moving party supports a conclusion that there is no genuine issue of material fact, the court will determine that

4

the moving party has carried its burden, and "judgment shall be rendered forthwith." *Id.* (alteration omitted).

## III. DISCUSSION

In the instant motion for summary judgment, Defendants allege that Plaintiff failed to exhaust the Jail's grievance procedures prior to filing the instant action, and Defendants maintain that they are otherwise entitled to qualified immunity [Doc. 32].

### A. Exhaustion

Defendants claim an entitlement to summary judgment based on Plaintiff's failure to exhaust his administrative remedies in compliance with the PLRA, which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Administrative exhaustion is mandatory, regardless of the type of relief sought, or whether such relief can be granted through the administrative process. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016); *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). This mandatory exhaustion requirement is one of "proper exhaustion," which requires a plaintiff to complete "the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford*, 548 U.S. at 88, 93.

The Court previously entered an order allowing the parties to supplement their respective positions as to whether Plaintiff properly exhausted his claims prior to filing the instant suit [Doc. 36]. In that order, the Court noted that Plaintiff alleged that he had copies of all of his grievances and allowed him fourteen (14) days within which to supplement his summary judgment response to include such copies [*Id.*]. That order also allowed Defendants an opportunity to clarify the Jail's

grievance exhaustion process [*Id.*]. Defendants timely supplemented their motion with the Jail's written policies regarding inmate grievance procedures, which require an inmate to file a written complaint within seven (7) days of occurrence and appeal any unsatisfactory decision to the Jail Administrator [Doc. 38-1]. Plaintiff, in contrast to his initial assertion, now alleges that he does not have copies of the grievances [*Compare* Doc. 34 *with* Doc. 37].[2]

While Plaintiff purports to have exhausted his claims, he has failed to substantiate that assertion despite having been an afforded an opportunity to do so. The only competent evidence addressing his efforts is the affidavit of Chief Deputy Ron Hayes of the Claiborne County Sheriff's Office, who attests that Plaintiff did not use the jail's grievance procedures, "let alone exhaust[] the process, before filing the present lawsuit" [Doc. 32-4 ¶ 5]. Therefore, the Court finds that Plaintiff did not properly exhaust his available administrative remedies prior to filing the instant suit, and Defendants are entitled to summary judgment.

B. **Individual Liability**

Although not necessary, the Court will, out of an abundance of caution, consider Defendants' defense of qualified immunity as to the claims against them in their individual capacities.

Qualified immunity protects governmental employees from individual, civil liability as long as their conduct does not violate clearly established "constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An evaluation of qualified immunity requires the Court to conduct a three-pronged inquiry: (1) whether there was a constitutional violation; (2) whether the violated right was "clearly-

---

[2] In his most recent filing, Plaintiff alleges that he does not have copies of his grievances because he was transferred to the Hawkins County Jail [Doc. 37]. However, Plaintiff was already housed at the Hawkins County Jail when he initially stated he had copies of his grievances in this case [*See* Doc. 34-2].

6

established;" and (3) whether the official's actions were objectively unreasonable. *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999).

For a right to be clearly established, "at the time of the officer's conduct, the law [must have been] sufficiently clear [such] that 'every reasonable official would understand what he is doing is unlawful.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Once qualified immunity has been pleaded by a defendant, the plaintiff bears the burden of rebutting the defense by showing both "that the challenged conduct violated a constitutional or statutory right, and that the right was so clearly established at the time of the conduct 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'" *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014) (citing *Ashcroft*, 563 U.S. at 741). In short, it is a defense that protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

### 1. Failure to Protect

Under the Eighth Amendment, a prison official has a duty to protect an inmate from violence caused by other prisoners. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Nelson v. Overberg,* 999 F.2d 162, 165 (6th Cir. 1993); *Walker v. Norris,* 917 F.2d 1449, 1453 (6th Cir. 1990). Thus, prison officials are required to "take reasonable measures to guarantee the safety of the inmates." *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Liability attaches to an officer's failure to protect an inmate only where the inmate demonstrates that he was "incarcerated under conditions posing a substantial risk of serious harm," and that the prison officials acted with deliberate indifference to the inmate's safety. *Farmer*, 511 U.S. at 834, 837. "Deliberate indifference" means that a prison official is liable only where he knows that the inmate faces a substantial risk of serious harm and disregards the risk. *Id*. at 837 (quotation marks omitted). Therefore, in order for liability to attach to a prison official's

failure to protect, the substantial risk and need for protection must be obvious. *See, e.g., Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003).

While Plaintiff claims that he was assaulted by inmate King due to Defendants' failure to protect him, video evidence in this case refutes his allegations. The videos show Plaintiff entering a pod with a group of other inmates and immediately walking to the other end of the pod to confront the subject inmate [Docs. 32-1 and 32-2]. The videos show the subject inmate backing away into a corner as Plaintiff confronts him, and Officer Sexton attempting to step in between Plaintiff and the subject inmate [Docs. 32-1 and 32-2]. The videos further depict Plaintiff beating the subject inmate while the other inmates close around the subject inmate to join in [Docs. 32-1 and 32-2]. The subject inmate then runs to the center of the pod as Plaintiff gives chase [Docs. 32-1 and 32-2]. Officer Sexton again attempts to separate the men while attempting to keep the other inmates at bay [Docs. 32-1 and 32-2]. Three inmates — including Plaintiff — chase the subject inmate to the wall, and Officer Sexton successfully places himself between the three inmates and the subject inmate [Docs. 32-1 and 32-2]. Additional guards enter the pod and separate the inmates [Docs. 32-1 and 32-2]. Plaintiff is seen being escorted out of the pod through a different door than the subject inmate [Docs. 32-1 and 32-2]. Although it is difficult to tell from the video, Plaintiff does not appear visibly injured [Docs. 32-1 and 32-2].

Plaintiff's version of events is blatantly contradicted by the video evidence in this case to a degree that no reasonable jury could find failure-to-protect liability against Defendants Brooks, Berry, Reagan, England, or Sexton. *See, e.g., Scott v. Harris*, 550 U.S. 372, 380 (2007). Accordingly, Defendants are entitled to qualified immunity as to Plaintiff's failure-to-protect claim.

### 2. Excessive Force

Plaintiff's claim that he was assaulted by prison guards in an act of excessive force implicates the Eighth Amendment's prohibition against cruel and unusual punishment. *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002). In determining whether a prison official has violated the Eighth Amendment's prohibition against excessive force, courts apply a two-part inquiry that is made up of subjective and objective components: (1) "whether force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm," i.e. the subjective component; and (2) whether the conduct, in context, is sufficient serious to offend "contemporary standards of decency," i.e., the objective component. *Hudson v. McMillan*, 503 U.S. 1, 6, 9 (1992).

The subjective prong requires consideration of the need for the use of force, the relationship between that need and the force used, the threat reasonably perceived by the official, and the extent of the injury. *Hudson*, 503 U.S. at 7. To satisfy the objective component, an inmate need not prove a serious injury to prove cruel and unusual treatment, but the extent of the injury may be probative of whether the force was plausibly "thought necessary" in the situation. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). However, "not every malevolent touch by a prison guard" creates a federal claim, and *de minimis* uses of physical force that are not repugnant to the conscience of mankind do not violate the Eighth Amendment. *Id*. (quoting *Hudson*, 503 U.S. at 9). In fact, the good faith use of physical force in pursuit of a valid penological objective will rarely, if ever, violate the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).

The video evidence in this case clearly shows that Defendant Sexton attempted to separate the Plaintiff and the subject inmate and restore order [Docs. 32-1 and 32-2]. Defendant Sexton is not seen in any frame engaging in behavior that would satisfy the test for deliberate indifference

9

[Docs. 32-1 and 32-2]. Accordingly, Defendant Sexton is entitled to qualified immunity as to the excessive force claim against him.

### 3. Medical Needs

The denial of constitutionally adequate medical care violates the Eighth Amendment's prohibition against cruel and unusual punishment, which proscribes acts or omissions that produce an "unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). An Eighth Amendment claim for the denial of adequate medical treatment is composed of two parts: (1) an objective component, which requires a plaintiff to show a "sufficiently serious" medical need; and (2) a subjective component, which requires the plaintiff to show the defendants acted with "deliberate indifference" to that need. *Farmer*, 511 U.S. at 834, 842.

Plaintiff's claims that he was denied medical care for severe injury and bleeding [*see* Doc. 2] is contradicted by the video evidence and photographic evidence taken near the time of the incident [Docs. 32-1, -2, and -3]. Further, jail records do not show that Plaintiff requested medical treatment as a result of the February 11 incident [Doc. 32-4 ¶ 13]. In the absence of a request for treatment, Plaintiff cannot establish that Defendants Smith and Sexton were deliberately indifferent to his serious medical need for treatment. Defendants Smith and Sexton are entitled to qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [Doc. 30] will be **GRANTED**, and this action will be **DISMISSED WITH PREJUDICE**. Any pending motions [Doc. 39] will be **DENIED** as moot. The Court hereby **CERTIFIES** that any appeal from this order would not be taken in good faith. Thus, should Plaintiff file a notice of appeal, this Court will **DENY** Plaintiff leave to appeal *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24.

**AN APPROPRIATE ORDER WILL ENTER**.

ENTER:

s/J. RONNIE GREER<br>
UNITED STATES DISTRICT JUDGE